UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVANSTON INSURANCE COMPANY,
a foreign corporation,

    Petitioner,

v.                               Case No:  2:21-cv-508-JES-KCD

STAN WEEKS & ASSOCIATES,
INC., a Florida corporation,

    Respondent.

---

**OPINION AND ORDER**

    This insurance coverage dispute involves two excavators owned by Stan Weeks & Associates, Inc. (Weeks), an excavation and mining company, that were damaged after a levee failed and flooded a shell mine where the excavators were located.  Evanston Insurance Company (Evanston) filed a declaratory judgment action (Doc. #1) seeking declarations that coverage for the loss to one excavator was excluded under the policy's "earth movement" exclusion (Count I) and that coverage for the loss to both excavators was excluded under the policy's "water damage" exclusion (Count II).  (Id., pp. 7-8.) Weeks filed a Counterclaim for breach of contract, alleging that Evanston failed or refused to fully indemnify Weeks for the loss to both excavators in accordance with the policy.  (Doc. #23, p. 8.)

This matter now comes before the Court on review of the parties' cross Motions for Summary Judgment (Docs. ##40, 59). The parties filed Responses in Opposition (Docs. ##48, 61), and a Reply (Doc. #49.)  For the reasons set forth below, Evanston's motion is granted and Week's motion is denied.

I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if

2

reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."  Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**II.**

The material facts are not in dispute:

Evanston issued an "all-risks" insurance policy (the Policy) to Weeks for the period of July 28, 2020 through July 28, 2021. (Doc. #1-2.)  The Policy (policy #SAA333192) provided coverage for scheduled equipment, including excavators bearing serial numbers GKX00341 (Excavator 1) and DKY03913 (Excavator 2). (Doc. #1, ¶ 6.) The parties agree that no part of the Policy relating to the claim is ambiguous.  The Policy's Insuring Clause stated: "**We** will pay for **loss** to **Covered Property** from any one **occurrence** caused by a **Covered Cause of Loss**, during the coverage period."  (Doc. #1-2,

3

p. 82, emphasis in original.) The Policy's Covered-Cause-Of-Loss Clause stated that the Policy covers "**Loss** caused by any external cause, except as otherwise excluded in paragraph V." (Id.) In turn, the Policy's "earth movement" and "water damage" exclusions contained in paragraph V provided:

> **V.   PERILS EXCLUDED**
>
> This policy does not insure against **loss** which is caused by, or arises in or from any of the following, whether or not there are any other contributing causes which would otherwise be covered by this policy.
>
> * * *
>
> D. Earthquake, volcanic eruption, landslide, or other earth movement;
>
> * * *
>
> F. Water damage caused by, contributed to or aggravated by any of the following;
>
> 1. Flood, surface water, rising waters, waves, tides or tidal waves, storm surge, overflow of any body of water or their spray, all whether driven by rain or not;
>
> 2. Mudslide or mudflow;
>
> 3. Water which backs up from any sewer or drain; or Water that seeps, leaks or flows from below the surface of the ground;
>
> * * *

(Id. at 83-84, emphasis in original.)

4

Weeks asserts that on November 20, 2020, it suffered a total loss of two excavators. On December 2, 2020, Weeks submitted a "Liability Notice of Occurrence/Claim" to Evanston (Doc. #40-1) to report the loss. Weeks reported that Excavator 1 was "submerged in a sinkhole" while on the job, and Excavator 2 was "submerged when [an] isolation levy failed due to a sinkhole at jobsite" at a shell mine in Punta Gorda, Florida. (Doc. #1, ¶ 12.) The Notice included the following pictures of Excavator 1 and Excavator 2:

 

(Docs. ##1-3; 1-4.)

Evanston retained independent adjuster Engle Martin & Associates (Engle Martin) which, along with a representative from Weeks, inspected the scene and the damaged excavators on December 14, 2020. (Doc. #1, ¶¶ 15-16.) Both excavators were found to be a total loss. Under the heading "Cause of Loss," the Engle Martin report stated:

> According to the insured representative, the insured was working at a job site and had left their equipment there overnight. Upon returning the following morning, they found a sink hole had opened beneath one excavator

5

>(Ser # GKX00341) and it had sunk. The photo the insured provided showed only the arm and bucket above the water.
>
>With the formation of the sinkhole, the flow of water apparently caused the levee to fail as well, which flooded approximately 6 acres adjacent to the sinkhole. Excavator (Ser # D KY03913) was parked in that field and suffered flooding damage into the cab.

(Doc. #59-5, p. 3.)

In February 2021, Evanston advised Weeks by telephone that coverage for the loss was excluded under the Policy's "earth movement" and "water damage" exclusions. (Doc. #1, ¶ 19.) Weeks disagreed with Evanston's conclusion. (Id., ¶ 20.)

Evanston then retained J.S. Held LLC (JS Held) to determine the cause and origin of the ground movement. JS Held performed a ground-movement assessment at the shell mine on March 1, 2021. (Doc. #59-6; Doc. #40-2.) The Ground Movement Report, issued March 9, 2021, described the property as a 138-acre parcel which had been used as an active shell mine since 2007 or 2008. At the time of the inspection there were two older mine pits, or "cells," which were no longer being mined, plus a third pit which was actively being mined. The pits were approximately 25 to 30 feet below grade. Due to relatively high groundwater table, the mining

activities required dewatering, and the two older pits were used to hold the water from the new active pit.[1]  (Doc. #59-6, p. 3.)

The Ground Movement Report set forth the following relevant information, provided by Weeks, describing the events leading to the loss: At the end of the day before the loss, an excavator was parked on a "shelf" (an area where the ground elevation was raised several feet above the bottom of the pit) in the de-watered active mining pit.  A second excavator was parked within the active pit farther to the south.  When Weeks personnel returned to the mine the next morning, it was discovered that the active pit had flooded and the road between the new and old pits had been washed out.  The flow of the water into the active pit had eroded the soil of the shelf which had supported the excavator, resulting in the excavator falling to the bottom of the pit and being buried by suspended soils in the floodwater.  The second excavator in the pit was also flooded, but the soil underneath it had not been washed out.  The berm between the two older pits had been washed out, resulting in the water level in the smaller pond rising by several feet.  (Doc. #59-6, p. 5.)

The Ground Movement Report concluded:

> The soil movement which reportedly caused damage to one excavator was the result of the hydrodynamic forces of

---

[1] Weeks asserts, and Evanston does not dispute, that the two older pits were manmade and were being used in its mining operations. (Doc. #59, p. 3.)

7

>   water eroding the soils which supported the excavator.
>   The excavator was reported to be parked near the edge of
>   a raised "self" in the mining pit, and the erosion of
>   the soil caused the excavator to fall into a lower
>   section of the pit.  The excavator was subsequently
>   buried by the suspended soils in the water.
>
>   The flood event was initiated due to a partial washout
>   of the berm between the smaller pond in the center of
>   the property, and the larger pond on the north side of
>   the property. The berm washout resulted in the water
>   level in the smaller pond rising several feet, which in
>   turn resulted in the washout of the berm on the north
>   side of the road between the new mining pit and the pond.
>   Water subsequently flowed across the road, washing out
>   the berm on the south side of the road and then flowing
>   into the new mining pit.

(Doc. #59-6, pp. 6-7.)

On March 17, 2021, Evanston issued a written declination of coverage to Weeks.  (Doc. #1, ¶ 26.)

**III.**

The "all risks" policy Evanston issued to Weeks (Doc. #1-2) is governed by Florida law.[2]  "[A]n 'all-risk' policy is not an 'all loss' policy, and this does not extend coverage for every

---

[2] "In a contract action, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result." Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998); S.-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC, 872 F.3d 1161, 1164 (11th Cir. 2017). Florida courts apply the rule of lex loci contractus, which "provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006). Evanston states (and Weeks does not dispute) that the Policy was issued and delivered to Weeks, a Florida corporation, in Florida. (Doc. #1, ¶¶ 4, 8.) Both parties also apply Florida law.

8

conceivable loss." Sebo v. Am. Home Assurance Co., 208 So. 3d 694, 696-97 (Fla. 2016) (citation omitted). "An all-risks policy provides coverage for all losses not resulting from misconduct or fraud unless the policy contains a specific provision expressly excluding the loss from coverage." Mejia v. Citizens Prop. Ins. Corp., 161 So. 3d 576, 578 (Fla. 2d DCA 2014) (citation and internal quotation marks omitted). "[A]n insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect. The burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms." Jones v. Federated Nat'l Ins. Co., 235 So. 3d 936, 941 (Fla. 4th DCA 2018) (citation omitted). "The insured does not need to disprove any excluded causes." Citizens Prop. Ins. Corp. v. Munoz, 158 So. 3d 671, 674 (Fla. 2d DCA 2014). "In short, in all-risk policies . . . construction is governed by the language of the exclusionary provisions." Sebo, 208 So. 3d at 697.

Under Florida law, the interpretation of an insurance policy is a question of law. Westchester Gen. Hosp., Inc. v. Evanston Ins. Co., 48 F.4th 1298, 1302 (11th Cir. 2022). See also People's Tr. Ins. Co. v. Garcia, 263 So. 3d 231, 234 (Fla. 3d DCA 2019). Terms utilized in an insurance policy are given their plain and unambiguous meaning as understood by the "man-on-the-street." Atl. Specialty Ins. Co. v. Pastukov, 750 F. App'x 909, 911 (11th Cir.

9

2018)(quoting Harrington v. Citizens Prop. Ins. Corp., 54 So. 3d 999, 1001 (Fla. 4th DCA 2010)). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). See also Wash. Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013). An unambiguous policy provision is "enforced according to its terms whether it is a basic policy provision or an exclusionary provision." S.-Owners Ins. Co., 872 F.3d at 1164 (quoting Hagen v. Aetna Cas. & Sur. Co., 675 So. 2d 963, 965 (Fla. 5th DCA 1996)). Further, "insurance coverage must be construed broadly and its exclusions narrowly." Horn v. Liberty Ins. Underwriters, Inc., 998 F.3d 1289, 1293 (11th Cir. 2021) (quoting Hudson v. Prudential Prop. & Cas. Ins. Co., 450 So. 2d 565, 568 (Fla. 2d DCA 1984)).

**IV.**

The evidence shows without dispute that Weeks suffered a loss of both excavators during the time period the Policy was in effect. Weeks is therefore entitled to judgment unless Evanston carries its burden of showing that one or both of the exclusions apply. Evanston argues that it has carried its burden because the undisputed facts show that the Policy's "water damage" and/or "earth moving" exclusions apply. (Doc. #40, pp. 9-15.)

Weeks states that "[w]hile it is not clear from Petitioner's investigation as to why the levee washed out, it is agreed that a levee, designed to hold back and retain water failed causing a chain of events that damaged Respondent's excavators." (Doc. #59, p. 6.)  See also Doc. #59, p. 4, ¶ 13 ("The damage was caused after levies between the mines and cells holding water failed and caused water intrusion into the excavators.")  Weeks continues that

> [t]he question therefore is whether the chain of events starting with the failure of the levee and resulting in damage fall within subject policy's water-damage exclusion or earth movement exclusion.

(Doc. #59, pp. 6-7.)  Weeks argues that the answer is "no" because both exclusions require a "natural phenomena," not simply the failure of a "manmade structure" (such as the manmade cells and levees) which broke and caused damage.  (Doc. #48, p. 1; Doc. #59, p. 2.)  Weeks argues that a failure of a manmade structure to perform as designed is not a natural phenomenon, and therefore is not excluded by either provision of the "all risk" Policy relied on by Evanston. (Id.)

**A. Earth Movement Exclusion**

Count I of the Petition asserts that coverage for the loss of Excavator 1 is excluded pursuant to the Policy's "Exclusion D – Earth Movement" exclusion. (Doc. #1, p. 7.)  This excludes "a **loss** which is caused by, or arises in or from any of the following, whether or not there are any other contributing causes which would

11

otherwise be covered by this policy . . . D. Earthquake, volcanic eruption, landslide, or other earth movement; . . ." Count I asserts that "[t]he compacted soil shelf on which Excavator #1 sat was eroded by the floodwater that overflowed from the retention ponds and flooded the mining pit" (Doc. #1, ¶ 36), and thus qualifies as "other earth movement" under Exclusion D.

Weeks argues that the earth movement exclusion is limited to damage caused by "natural phenomena." (Doc. #48, p. 8.) Weeks concludes that its claim for damages to Excavator 1 is not excluded under the earth movement exclusion because the loss was the result of the failure of the levee – a manmade structural component of its mining operation – not a natural phenomenon. (Id., pp. 8-9; Doc. #59, pp. 11-12.)

Weeks is correct that under Florida law an earth movement exclusion is generally limited to damage caused by "natural phenomena." Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1088 (Fla. 2005) ("In line with the majority of courts, we conclude that absent specific language in the policy to the contrary, an earth movement exclusion is limited to damage caused by natural phenomena.") The Policy's earth movement exclusion provision excludes loss from "earthquake, volcanic eruption, landslide, or other earth movement", all of which suggest natural phenomena.

But Weeks' argument is mis-focused. While a "man-made event such as blasting" does not fall within an earth movement exclusion,

12

Fayad, 899 So. 2d at 1088, there was no such event in this case. Rather, the evidence establishes that a natural phenomena impacted a man-made structure, which resulted in the loss of Excavator 1.

> The soil movement which reportedly caused damage to one excavator was the result of the hydrodynamic forces of water eroding the soils which supported the excavator. The excavator was reported to be parked near the edge of a raised "shelf" in the mining pit, and the erosion of the soil caused the excavator to fall into a lower section of the of the pit. The excavator was subsequently buried by the suspended soils in the flood water.

(Doc. #40-2, p. 4.)  Thus, the cause of the earth movement was a natural phenomenon – hydrodynamic forces of water eroding the soils of the levee or shelf upon with the Excavator was placed – which eventually led to Excavator 1 falling into a lower lying area where it was buried under suspended soil in the floodwater.  While the levee and shelf were manmade, the cause of the damage was not.  At the very least, the loss was caused by or arose in or from earth movement "whether or not there are any other contributing causes which would otherwise be covered by this policy."  (Doc. #1-2, p. 83.)[3]

---

[3] As noted above, on several occasion Weeks asserted that the cause of the loss was a sinkhole. A sinkhole is a natural phenomena under Florida law.  A "sinkhole" is "a landform created by subsidence of soil, sediment, or rock as underlying strata are dissolved by groundwater.  A sinkhole forms by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved." Fla. Stat. § 627.706(h).

### B. Water Damage Exclusion

Count II of the Petition asserts that coverage for the loss of Excavator 1 and Excavator 2 is excluded pursuant to the Policy's "Exclusion F — Water Damage." (Doc. #1, p. 8.) This excludes coverage for losses caused by, contributed to or aggravated by "[w]ater damage caused by, contributed to or aggravated by . . . [f]lood, . . . rising waters, . . . storm surge, . . . overflow of any body of water, . . . or [w]ater that seeps, leaks or flows from below the surface of the ground." See (Doc. #1-2, pp. 83-84.) Count II asserts that water damage was a contributing cause of damage to Excavator 1 and the sole cause of damage to Excavator 2.

As Weeks correctly points out (Doc. #59, p. 8), not all water damage is covered by this exclusion. Only water damage "caused by, contributed to or aggravated by" certain identified events, i.e., flood, rising waters, storm surge, overflow of any body of water, or water that seeps, leaks or flows from below the surface of the ground, is within the scope of Exclusion F.

Weeks argues that the grouping of the water-related events in the Policy language connotes a distinction between natural (or naturally flowing) and man-made. (Doc. #59, pp. 8-9.) Weeks argues that there is no such natural phenomena because the levees were manmade structures and the failure of a manmade structure is not a loss caused by natural events. (Id. at p. 9.) Weeks concludes that the water in this case was not naturally flowing

14

water that would fall under the exclusions, but water that was artificially and forcefully moved to cells as part of a mining operation. (Id., pp. 10-11.) See also (Doc. #48, pp. 7-8). There is no evidence which supports this theory.

The Court finds that the water damage exclusion excludes coverage for the damage to Excavators 1 and 2. The evidence shows that the damage to the Excavators was caused by the washing out of the berm between a smaller pond, which ultimately resulted in water flowing into the active mining pit where the Excavators were located. The water levels in the active mining pit rose high enough to submerge both Excavators, as depicted in the photographs. (Doc. #1-3; Doc. #1-4.) The Policy clearly excludes damage cause by "[f]lood, surface water, rising waters, waves, tides or tidal waves, storm surge, *overflow of any body of water* or their spray, all *whether driven by rain or not*." (Doc. #1-2, p. 84)(emphasis added). Applying the plain meaning of the terms, as the Court must, the damage to the Excavators was caused by natural movement of the water – that is the overflow of a body of water, flood, or rising waters that came from the berm washout between the retaining ponds. Despite the retention pond, levee, and/or berm being manmade, as discussed above there is no evidence that the *cause(s)* of the failure of the manmade object were due to manmade action. (Doc. #49, p. 3.)

15

Furthermore, the Policy's anti-concurrent cause provision states that "[t]his Policy does not insure against loss which is caused by, or arises in or from any of the following [exclusions], whether or not there are any other contributing causes which would otherwise be covered by this policy." (Doc. #40, pp. 12-15; Doc. #40-1, p. 83.) The undisputed material facts show that water damage did contribute to cause the loss, and that that any other causative factors and the sequence in which such factors operated, are irrelevant in light of the anti-concurrent cause provision. (Doc. #40, p. 15.)

Because the Court has found that Evanston is entitled to summary judgment on both of its coverage claims, it also finds that Evanston is entitled to summary judgment on Weeks' breach of contract Counterclaim.

Accordingly, it is now

**ORDERED**:

1. Petitioner Evanston Insurance Company's Motion for Final Summary Judgment (Doc. #40) is **GRANTED**. Judgment shall enter in favor of Evanston Insurance Company as to Count I and Count II of its Declaratory Judgment Petition. (Doc. #1.) It is adjudged that any coverage under Policy #SAA333192 for excavators bearing serial numbers GKX00341 (Excavator 1) is excluded pursuant to Exclusions D and F and any coverage for excavator DKY03913 (Excavator 2) is excluded pursuant to Exclusion F. Judgment shall also enter in

16

favor of Evanston Insurance Company as to Respondent's Breach of Contract Counterclaim (Doc. #23, p. 8) and Stan Weeks & Associates, Inc. shall take nothing on the Counterclaim.

    2.   Respondent Stan Weeks & Associates, Inc.'s Motion for Summary Judgment (Doc. #59) is **DENIED**.

    3.   The Clerk of the Court shall enter judgment accordingly. The Clerk shall terminate all pending motions, and deadlines as moot, and close the file.

    **DONE AND ORDERED** at Fort Myers, Florida, this __7th___ day of March, 2023.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record